## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HISMILE IP PTY LTD., HISMILE PTY LTD., and HISMILE, INC., | |
| Plaintiffs, | Civil Action No. 1:26-cv-3248 |
| vs. | **JURY TRIAL DEMANDED** |
| CEELIKE OFFICIAL GLOBAL BRAND MANAGEMENT LIMITED, LIL REPUBLIC LIMITED, ZEZHOU NIANNIAN YOUYU ELECTRONIC COMMERCE CO. LTD., GUANGZHOU CHINA HAN ORAL PRODUCTS CO., LTD., MEDCODES HEALTHCARE (SHENZHEN) LIMITED, and MEDCODES HEALTHCARE (JIANGXI) LIMITED, | |
| Defendants. | |

### COMPLAINT

Plaintiffs Hismile IP Pty. Ltd., Hismile Pty. Ltd., and Hismile, Inc. (collectively, "Hismile") bring this action to stop the Defendants from selling unauthorized knock-off versions of Hismile's famous V34® Whitening Strips and iD Stain Whitening Mouthwash. Defendants' knockoffs not only infringe on Plaintiff's valuable intellectual property and violate various New York laws—they also present a risk to the public health and safety of United States consumers.

Hismile sells its best-selling oral care products online and in over 40,000 retail locations worldwide, including supermarkets, pharmacies, and beauty stores. Hismile has enjoyed huge success—selling hundreds of millions of Australian dollars worth of oral care products worldwide—and has built a large U.S.-based following. Unfortunately, Hismile's success has gained the attention of copycats determined to free ride on Hismile's hard work. Because

1

Defendants CEELIKE Official Global Brand Management Limited, Lil Republic Limited, Zezhou Niannian Youyu Electronic Commerce Co. Ltd., Guangzhou China Han Oral Products Co., Ltd., Medcodes Healthcare (Shenzhen) Limited, and Medcodes Healthcare (Jiangxi) Limited (collectively, "Defendants" or "CEELIKE") have infringed Hismile's distinctive trade dress and copyrights, engaged in dilution under New York law and common law unfair competition, and engaged in deceptive trade practices and false advertising under New York law, Hismile seeks various remedies by way of this Complaint including injunctive relief and damages, a recall of all Infringing Products sold and/or distributed, and an Order requiring the destruction of all Infringing Products. Hismile alleges as follows:

<b><u>PARTIES</u></b>

1.      Plaintiff Hismile IP Pty Ltd. is an Australian private limited company with its primary place of business in Queensland, Australia.

2.      Plaintiff Hismile Pty Ltd. is an Australian private limited company with its principal place of business in Queensland, Australia.

3.      Plaintiff Hismile, Inc. is a Delaware corporation with its principal place of business in Queensland, Australia.

4.      Defendant Lil Republic Limited is a Delaware corporation. Its registered principal place of business is 57 Wheeler Ave, Apt. 405, Arcadia, California, 91006, but it advertises its business address as 2611 Durham Court, Arcadia, California, 91007, which is also the registered address of its Secretary, Chief Financial Officer, and Chief Executive Officer, Yuqing Jia, and its President, Anthony Wan. Defendant Lil Republic Limited also has a registered mailing address of 3919 E Coronado Privado, Ontario, CA 91761. Defendant Lil Republic Limited can be reached by email at lilrepublic@hmyc.shop.

2

5.      Ms. Jia, who also goes by "Ecko Jia," describes herself as a Founder and Partner of "Ceelike," which she describes as "Ranked #13 among all TikTok U.S. sellers and #3 in the oral care category." Therefore, on addition to being an officer of Defendant Lil Republic Limited, on information and belief Ms. Jia also either directly or indirectly controls or otherwise represents Defendants CEELIKE Official Global Brand Management Limited and Zezhou Niannian Youyu Electronic Commerce Co. Ltd. Due to their apparent interrelationships, Lil Republic Limited, CEELIKE Official Global Brand Management Limited and Zezhou Niannian Youyu Electronic Commerce Co. Ltd. are collectively referred to herein as the "CEELIKE Defendants."

6.      On information and belief, Defendant Lil Republic Limited acts as at least one of the domestic fronts for Defendants' infringements, including by operating the "CEELIKE & MSDRwikey Oral Care" and "Ceelike Oral Care" TikTok Shop storefronts through which the Infringing Products are sold to U.S. consumers and through which the CEELIKE Defendants' affiliate marketing program is managed. The CEELIKE Defendants also use a location in New Jersey (245 Mountain Ave, Middlesex, NJ) and additional locations in at least Illinois and California as fulfillment centers in the United States.

7.      On information and belief, Defendant Zezhou Niannian Youyu Electronic Commerce Co. Ltd. is a Chinese limited company with its principal place of business at No. 12, West Xiayuan Street, Chuanhe Village, Zhoucun Town, Jincheng, Shanxi, China. On information and belief, Defendant Zezhou Niannian Youyu Electronic Commerce Co. Ltd operates Defendants' "CEELIKE Global" and "CEELIKE Oral" TikTok Shop storefronts through which the Infringing Products are sold to U.S. consumers and through which the CEELIKE Defendants' affiliate marketing program is managed.

3

8. Defendant CEELIKE Official Global Brand Management Limited (孫鶴 喜來客 電子商務有限公司）is a Hong Kong SAR private limited company by shares (Bus. Reg. No. 78910259), incorporated on October 9, 2025, whose sole registered director is Sun He (孫鶴). On information and belief, its principal place of business is Kwun Wah Building, 2 Yuen Shun Yuen, Yuen Chau Kok Shop E, G/F, Sha Tin, New Territories, Hong Kong, S.A.R., China.

9. On information and belief, Defendant CEELIKE Official Global Brand Management Limited provides the ultimate direction and controls Defendants' infringing conduct conducted under the "CEELIKE" brand. Among other things, on information and belief Defendant CEELIKE Official Global Brand Management Limited issues affiliate training instructions and controls product development, packaging, and marketing strategy across all Defendants and others, in all markets worldwide.

10. For example, Defendant CEELIKE Official Global Brand Management Limited is the entity whose name appears on Defendants' e-commerce website at <ceelike.com>. Confirming that the U.S. is its primary target market and where it infringes and directs its infringement—the <ceelike.com> website lists Defendants' service hours as being "9am-6pm EST" (Eastern Standard Time). This website further offers free shipping to U.S. consumers, and boasts that the CEELIKE Defendants fulfill North American orders "primarily … from our **warehouses in the United States.**" (emphasis in original). Defendant CEELIKE Official Global Brand Management Limited's email address and contact information also is listed on the Infringing Products' packaging.

11. CEELIKE Defendants can be and have been reached by email at beishan@ceelike.com, tuoniao@ceelike.com, team@ceelike.com, support@ceelike.com, and legal@ceelike.com. CEELIKE Defendants, through their Head of Operations, for and on behalf

of CEELIKE Management and CEELIKE Management Legal Team, have acknowledged receiving and responded to Hismile's communications via e-mail, including Hismile's May 6, 2026, cease and desist demand and its May 11, 2026, follow-up notice, by means of which Hismile attempted to secure Defendants' voluntary cessation of their infringing and fraudulent activities. But despite receiving two cease-and-desist notices, Defendants refused to stop.

12.    On information and belief, Defendant Medcodes Healthcare (Jiangxi) Limited (美康迪医疗（江西）有限公司) is a Chinese limited company with its principal place of business at No. 1399 of Tianxiang North Road. Hi-tech Zone, Nanchang City, Jiangxi Province, China. Medcodes Healthcare (Jiangxi) Limited has designated a U.S. Agent for purposes of its registration with the U.S. Federal Food & Drug Administration (FDA Establishment Identifier (FEI) No. 3030795776), namely: Medright Tech Inc., 6302 Fort Hamilton Parkway, 1R, Brooklyn, New York 11219. On information and belief, Defendant Medcodes Healthcare (Jiangxi) Limited manufactures and packages the below-described Infringing Whitening Strips for the CEELIKE Defendants (and for others), knowing and intending that such products will be sold in the U.S. and be confused with Hismile's below-described Purple Box Trade Dress. At least some of the Infringing Products that the CEELIKE Defendants have marketed and sold identify Defendant Medcodes Healthcare (Jiangxi) Limited as the manufacturer, as shown below:

Manufacturer: Medcodes Healthcare (Jiangxi) Limited
Address: No.1399 of Tianxiang North RD.. Hi-tech Zone
Nanchang City, Jiangxi Province, China
Email: support@ceelike.com
Website: https://www.ceelike.com/
Shelf Life: Two years
Made In China

13.    On information and belief, Medcodes Healthcare (Shenzhen) Limited (美康迪医疗（深圳）有限公司) is a Chinese limited company with its principal place of business at 401, Building A, No.6 of Xinmu Road, Xinmu Community, Pinghu, Shenzhen, Guangdong, 518111,

China. Medcodes Healthcare (Shenzhen) Limited has designated a U.S. Agent with the FDA (FEI No. 3025428426), namely: Jessie Yao, 6302 Fort Hamilton Parkway, 1R, Brooklyn, New York 11219. Jessie Yao is a representative of Medright Tech Inc. On information and belief, Defendant Medcodes Healthcare (Shenzhen) Limited operates a sales center in Shenzhen, China, where it provides sales and consulting assistance to the CEELIKE Defendants (and others) for teeth whitening products and cross-border trade, including the Defendants' infringing whitening strip products. Medcodes Healthcare (Shenzhen) Limited's FDA registration indicates that it is a Foreign Exporter and Manufacturer of various oral and nasal care products, including Teeth Whitening Strips, as shown below:

| | |
|---|---|
| Proprietary Name: | medcodes W10, medcodes W20, medcodes W30, medcodes W40; Teeth Bleaching Light W1001, W3001, W4002, W4003; Teeth Whitening Strip WS301, WS401; W4009,W4019,W4011,W4018,W4010,W4017,W4015,W4016,W4260,W4280 |
| Classification Name: | HEAT SOURCE FOR BLEACHING TEETH |
| Product Code: | EEG |
| Device Class: | 1 |
| Regulation Number: | 872.6475 |
| Medical Specialty: | Dental |
| Registered Establishment Name: | MEDCODES HEALTHCARE (SHENZHEN) LIMITED |
| Registered Establishment Number: | 3025428426 |
| Owner/Operator: | Medcodes Healthcare (Shenzhen) Limited |
| Owner/Operator Number: | 10086499 |
| Establishment Operations: | Foreign Exporter; Manufacturer |

14.     On information and belief, Defendants Medcodes Healthcare (Shenzhen) Limited and Medcodes Healthcare (Jiangxi) Limited are either the same business or are related, owned, or controlled by, and employ the same persons. For example, Defendants Medcodes Healthcare (Shenzhen) Limited and Defendant Medcodes Healthcare (Jiangxi) Limited (the "Medcodes Defendants") jointly advertise their "professional overseas sales department, technical research and development department, tooling department, quality department, dust-free first-class production workshop, supporting customized logo, appearance, color, packaging, personalized

6

technical requirements, etc." Additionally, a business card identifies Tracey Cao as the

Marketing Manager for both entities, listing a single email address and website, and

documentation regarding the appointment of a U.S. Agent for FDA Registration purposes also

lists Tracey Cao for Medcodes Healthcare (Jiangxi) Limited' contact person:



Moreover, as depicted in the below screen capture, the Medcodes Defendants sell at least a

plurality of their infringing teeth whitening products in or to the U.S.:



7

15.     On information and belief, Defendant Guangzhou China Han Oral Products Co., Ltd. ("GCHOP") is a Chinese limited company with its principal place of business at No. 86 Zhenchua North Road, Shenshan Industrial Park, Jianggao Town, Baiyun District, Guangzhou, China. As shown in the below registration excerpt, GCHOP has registered with the FDA (FEI No. 3020970375), and is believed to have a designated U.S. agent per FDA regulations. GCHOP manufactures the CEELIKE Anti-Stain Mouthwash for the CEELIKE Defendants, as shown in the photograph below. On information and belief, GCHOP also assisted the CEELIKE Defendants with the packaging design for and packages Defendants' Infringing mouthwash Products and assists the CEELIKE Defendants with global distribution, including assistance with export and import into the U.S. of Defendants' Infringing mouthwash Products, intending for them to be sold in the U.S. and to cause confusion with Hismile's below-described iD Mouthwash Trade Dress:

| FEI Number | Firm Name |
| --- | --- |
| 3020970375 | Guangzhou China Han Oral Products Co., Ltd. |

**Physical Address**

| | |
| --- | --- |
| Line 1 Address: | No. 86 North Zhenhua Road |
| Line 2 Address: | Shenshan Industrial Park, Jianggao Town, Baiyun District |
| City: | Guangzhou |
| State: | |
| Province: | Guangdong |
| Zip/Mail Code: | 510460 |
| Country: | CN - CHINA |

**Mailing Address**

| | |
| --- | --- |
| Line 1 Address: | No. 86 North Zhenhua Road |
| Line 2 Address: | Shenshan Industrial Park, Jianggao Town, Baiyun District |
| City: | Guangzhou |
| State: | |
| Province: | Guangdong |
| Zip/Mail Code: | 510460 |
| Country: | CN - CHINA |

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction under at least 28 U.S.C. §§ 1331, 1367(a), and 1338(a)-(b).

17.     The Court has personal jurisdiction over all Defendants, including under this State's long-arm statute and/or under Federal Rule of Civil Procedure 4(k) and the U.S. Constitution.

18.     For example, but without limitation, on information and belief, each of the Defendants has conducted substantial business in the U.S., including this State, and conspired with the other Defendants to place the Infringing Products into the stream of commerce through an established distribution channel with full awareness that substantial quantities of the products would be and have been shipped into the U.S., including this State, and otherwise has directed its activities into the U.S. and this State by agreeing with the other Defendants to, or by causing or assisting in the design and importation of the Infringing Products into, and the marketing, sale, or transportation of the Infringing Products in the U.S. and this State.

19.     On information and belief, each of the Defendants has purposefully directed their activities at this State or have aggregate contacts with the U.S. as a whole, such that the exercise of jurisdiction over them comports with the Due Process Clause of the U.S. Constitution.

20.     Venue is appropriate in this District under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) because at least two defendants have designated U.S. agents in this District; all Defendants are subject to personal jurisdiction in this State; and infringement has occurred in this District.

<u>FACTS</u>

**Hismile's History and Success Story**

21.      Hismile was founded in Australia in 2014 by Nik Mirkovic and Alex Tomic.

22.      Since its humble beginnings, when Hismile only sold a teeth-whitening kit online, Hismile has grown into a globally-recognized oral care brand. Hismile's products are sold today not just online, but in over 40,000 retail locations, including supermarkets, pharmacies, and beauty stores worldwide.

23.      Hismile's products have been endorsed by celebrities such as Kylie Jenner, Kim Kardashian, and Conor McGregor, as in the following image from an April 2023 Sephora TikTok ad, in which Kim Kardashian says: "Okay, you guys know that I love Hismile, I use their toothbrushes, their toothpaste, all of their whitening products, and their new V34 Colour Corrector . . . ."



24.      By 2018, thanks to Hismile's viral success, the brand's founders were recognized by Forbes' 30 Under 30 Asia list.

25.      In 2024 alone, Hismile sold over AUS$325 million worth of its oral care products worldwide.

26.    Hismile's rapid success and growth was attributable, in part, to its well-executed social media marketing campaigns, which built brand recognition and sales through a combination of celebrity endorsements and social media influencers and affiliate marketers. Hismile's years of hard work resulted in it now being considered "an internet sensation."

27.    Though its roots are in Australia, Hismile has built a substantial U.S. consumer base, with products sold throughout the U.S. both online, such as via us.hismileteeth.com, TikTok Shop, and Amazon, and through traditional retail partners such as Walmart, CVS, and Target.

28.    Hismile has also invested substantial resources in developing distinctive product trade dress, original creative content, and a highly recognizable brand identity. To that end Hismile employs an in-house creative team that produces original video content, hook voiceovers, scripts, and marketing copy for TikTok and other platforms, with an eye toward unique and recognizable branding.

29.    Among Hismile's distinctive and widely-recognized products are its V34® Whitening Strips and iD Stain Whitening Mouthwash, which Hismile has marketed, advertised, and sold through a variety of channels, including Facebook, Instagram, and TikTok, its e-commerce website, and traditional retail partners.

**Hismile's V34® Whitening Strips and Distinctive Purple Box Trade Dress**

30.    Since its debut in the market in June 2025, Hismile has marketed and sold its V34® Whitening Strips in distinctive purple packaging, using the same "hero" packaging color that it had previously used for several years across its entire V34® product lineup. The Hismile package V34® Whitening Strips packaging looks like this:



31.    Hismile's v34® Whitening Strips box (packaging) has a distinctive color scheme, shape/orientation, and other visual elements that represent deliberate marketing and branding design choices and do not present any functional, utilitarian, or cost-savings benefits. This packaging includes the following distinctive, non-functional design elements (the "Purple Box Trade Dress"):

a.    <u>Color</u>: the box features a dominant purple color with primarily white typography (features carried across the V34® product range).

b.    <u>Shape</u>: the box is tall, narrow, and portrait-oriented (also used for other products in the V34® line).

c.    <u>Additional elements</u>:

i.    Near the upper right corner, a circular "badge" and the phrase "Experts in Whitening" written in a circular format.

ii.    A white circular "badge" surrounding the number "30" and the text "MINS", the circle shape comprised partially of a curved arrow in the top

12

left quadrant, with the remaining quadrants drawn as dashed lines (or letters ("APPLICATION") that appear similar to dashed lines).

iii. Brand name ("hismile") oriented vertically in large white text along the side face of the box.

iv. "Technology" "badges" for "V34" and "COLOUR CORRECTION TECHNOLOGY" as secondary identifiers above the product name.

v. Imagery, including a purple-colored whitening strip, slightly lifting from its backing card, with a white glow in the lifted edge.

32. In addition to registrations outside the U.S., Hismile owns the registered trademark v34® in the U.S. (U.S. Trademark Reg. No. 7,239,793), for goods in International Class 3, specifically including: "Gels for teeth cleaning; Tooth care preparations; Pastes for teeth cleaning; Tooth cleaning preparations; Cleaning preparations for the teeth; Dental bleaching gels; Bleaching preparations (decolourants) for cosmetic purposes."

33. In addition to registrations outside the U.S., Hismile has applied to register certain aspects of the distinctive V34® Whitening Strip packaging trade dress at the U.S. Patent and Trademark Office, with priority to its Australian registration of the same in International Class 3, which covers oral care products, specifically for: teeth whitening strips; teeth whitening preparations; and non-medicated oral care preparations (U.S. Application Ser. No. 79438718). Hismile anticipates that a federal trade dress registration will be issued on this application in due course. The portions of the Purple Box Trade Dress that are included with the to-be-registered trade dress include the following (the words "WHITENING STRIPS" to be disclaimed):

13



34.      Hismile's Purple Box Trade Dress is ornamental, not functional, and its elements are distinctive from those used by legitimate market competitors. These ornamental features are not functional because, e.g., (1) competitors use other designs, including designs created prior to and after Hismile's Purple Box Trade Dress, (2) the Hismile Purple Box Trade Dress design does not provide any cost or quality advantage in the market for whitening strips, and (3) no competitors' ability to compete is significantly undermined by protecting Hismile's ornamental design because other designs exist and are and have been used in the industry, including by Defendants and others, e.g., as shown in the examples below:



35.      Hismile's Purple Box Trade Dress is fanciful or arbitrary with respect to teeth whitening strips, and thus is inherently distinctive.

36.      Including for the reasons described in more detail below, Hismile's Purple Box Trade Dress has also acquired substantial secondary meaning in the marketplace because it is and

had become associated with and indicative of the origin and quality of Hismile's products before Defendants commenced their infringements.

**Hismile's iD Stain Whitening Mouthwash and Distinctive iD Mouthwash Trade Dress**

37.     Hismile has marketed and sold its iD Stain Whitening Mouthwash since December 2025. Hismile markets and sells this product in a distinctive bottle that it designed entirely in-house. The bottle looks like this:



38.     Hismile's iD Stain Whitening Mouthwash bottle has a distinctive shape, fill volume, color scheme, and other elements, with each element representing deliberate marketing and branding design choices that do not present any functional, utilitarian, or cost-savings benefits. Specifically, and as depicted in the below images, Hismile's iD Stain Whitening Mouthwash packaging trade dress (the "iD Mouthwash Trade Dress") consists of the following non-functional distinctive design elements:

      a.   A tall, narrow aerosol-style cylindrical bottle silhouette, with a brushed metallic silver body, and a contrasting solid red cap.

      b.   A minimalist, label-free aesthetic with information printed directly on the bottle surface.

c.  Vertically oriented, boldface sans-serif typography with the product name running approximately the length of the bottle.

d.  A red-and-white rectangular brand badge block bearing the product mark ("iD").

e.  A non-standard fill volume of 237 mL / 8 fl. Oz.

f.  "Targets gunk & build-up" printed on the bottle (atypical for mouthwash).

39.    These design elements, including the color scheme and representations of the iD Mouthwash bottle, are also incorporated into Hismile's advertising copy which features "gunk-like" bubbles that, while not themselves functional, call to mind the product's function. This represents a unique approach, as mouthwash marketing is typically presented using a clean or clinical aesthetic. An example of such marketing copy appears below:



40.    Hismile's iD Mouthwash Trade Dress is ornamental, not functional, and its elements are distinctive from those used by legitimate market competitors. These ornamental features are not functional because, e.g., (1) competitors use other designs, including designs created prior to and after Hismile's iD Mouthwash Trade Dress, (2) the Hismile iD Mouthwash Trade Dress design does not provide any cost or quality advantage in the market for whitening strips, and (3) no competitors' ability to compete is significantly undermined by protecting

16

Hismile's ornamental design because other designs exist and are and have been used in the

industry, including by Defendants and others, e.g., as shown in the examples below:



41.    Hismile's iD Mouthwash Trade Dress is fanciful or arbitrary with respect to

mouthwash, and thus is inherently distinctive.

42.    Hismile's iD Mouthwash Trade Dress has acquired substantial secondary

meaning in the marketplace, including because it is and has become associated with and

indicative of the origin and high quality of Hismile's products before Defendants commenced

their infringements.

**Hismile's Marketing and Sales Demonstrate Secondary Meaning in its Distinctive Purple Box Trade Dress and iD Mouthwash Trade Dress**

43.    The unique look of Hismile's Purple Box Trade Dress and iD Mouthwash Trade

Dress, including both the packaging and advertising material that features that trade dress,

coupled with Hismile's substantial investment in developing its distinctive brands through

marketing, and the resulting significant sales, together have resulted in widespread consumer

association between Hismile and its distinctive Purple Box Trade Dress and iD Mouthwash

Trade Dress.

44.    Since releasing its V34® Whitening Strip and iD Stain Whitening Mouthwash

products in 2025, Hismile has sold significant quantities of its iD Stain Whitening Mouthwash

17

products with the iD Mouthwash Trade Dress and of its V34® Whitening Strip packages with the Purple Box Trade Dress in the U.S..

45.    Since the launch of those products, Hismile has also made large investments to market its iD Stain Whitening Mouthwash and its V34® Whitening Strips in the U.S.. Nearly all Hismile's advertising of its iD Stain Whitening Mouthwash and V34® Whitening Strips prominently features the Purple Box Trade Dress and iD Mouthwash Trade Dress.

46.    Hismile's direct advertisements and its network of influencers together have reached tens of millions of U.S. consumers through online impressions.

47.    Not including its other global accounts or the accounts of social media influencers who have promoted Hismile's products, Hismile's global TikTok account, has more than 5 million followers of which approximately 43.3% are U.S. based, and its posts have received 107.5 million "likes." Hismile's U.S. TikTok account has more than 152 thousand followers, and its posts have received 3.8 million "likes." Many of those posts feature depictions of the trade dress for Hismile's iD Stain Whitening Mouthwash and its V34® Whitening Strips packaging, receiving thousands of likes each.

48.    Hismile's Instagram account has 1.7 million followers, of which approximately 29.8% are U.S. followers. Its Instagram posts have featured depictions of the trade dress for Hismile's iD Stain Whitening Mouthwash and its V34® Whitening Strips packaging, and those posts have received thousands of "likes."

49.    Hismile's Facebook account has 1.8 million followers, of which approximately 29.8% are U.S. followers. Its Instagram posts have featured depictions of the trade dress for Hismile's iD Stain Whitening Mouthwash and its V34® Whitening Strips packaging, and those posts have received thousands of "likes."

50. Hismile's U.S. website receives over approximately 10 thousand unique daily visitors, and the product pages for its iD Stain Whitening Mouthwash and its V34® Whitening Strips (not including other marketing materials) have received thousands of visits per day.

51. Hismile also markets and sells its products in combinations, such that its marketing or sale of one of its products frequently leads to additional or substituted sales of other products (including such other oral care items such as lip balms, toothpaste serum, and its V34® tooth whitening serum). Thus, the above-referenced sales and marketing data do not even account for the full reach of Hismile's marketing.

52. Hismile's use of its iD Mouthwash Trade Dress and Purple Box Trade Dress has been substantially exclusive and continuous in the U.S. since the time of their respective launches. The only other known users of similar trade dress are other recent market entrants who, like Defendants, have copied and infringed Hismile's distinctive packaging and advertising, and against whom Hismile also is directing and has directed enforcement efforts.

**Defendants' Infringements and Unfair Competition**

53. Beginning in or around late 2025 or early 2026, Defendants began making, marketing, importing into the U.S., and selling and transporting in U.S. commerce a series of knock-off versions of Hismile's V34® Whitening Strips and iD Stain Whitening Mouthwash using names like "CEELIKE nHAP-Pro Purple Whitening Strips," "CEELIKE Anti-Stain Mouthwash," and other variations (e.g., CEELIKE Anti Stain Whitening Mouthwash; CEELIKE Stain Defense Mouthwash; CEELIKE Stain Whitening Mouthwash) (collectively, the "Infringing Products").

19

54.     The following images depict two examples of Defendants' Infringing Products:

 

55.     Hismile has not authorized, sponsored, manufactured, or approved any of Defendants' Infringing Products, the packaging or marketing for those products, or any of Defendants' activities, and Hismile is not in any way affiliated with Defendants, the Infringing Products, or the marketing or packaging of the Infringing Products.

56.     On information and belief, Defendants' Infringing Products are not identical to Hismile's V34® Whitening Strips or iD Stain Whitening Mouthwash, and have listed or disclosed ingredients that render the Infringing Products not only functionally inferior to Hismile's V34® Whitening Strips and iD Stain Whitening Mouthwash, but that also present a risk to public health and are not effective for their intended or marketed use.

**Defendants' Willful Infringement and Copying of Hismile's Purple Box Trade Dress**

57.     To launch, market, and sell their Infringing whitening strip Products, Defendants directly copied Hismile's distinctive Purple Box Trade Dress and marketing materials, as shown in the below examples:

20



21

| Side-by-Side Photographs of Hismile Purple Box Trade Dress and Sample Infringing Product | |
|---|---|
|   | |

| Hismile TikTok Shop Ad | CEELIKE Global TikTok Shop Ad |
|---|---|
|  |  |

| Hismile TikTok Shop Ad | CEELIKE & MSDRwikey Oral Care TikTok Shop Ad |
|---|---|
|  |  |

58. Defendants' infringing "CEELIKE Purple Whitening Strips" replicate nearly all aspects of the packaging of Hismile's V34® Whitening Strips packaging, including the protected Purple Box Trade Dress. The copied elements include at least the following:

| Element | Hismile | CEELIKE |
|---|---|---|
| Box color | All-over purple "hero" color | All-over purple "hero" color |
| Typography color | White on purple throughout | White on purple throughout |
| Box shape / orientation | Tall, narrow portrait-oriented rectangular box | Same |
| Circular "Badges" | Circular "30 MINS APPLICATION" Arrow Badge at center left;<br><br>Circular badge "Experts in Whitening" in upper right | Circular "30 MINS APPLICATION" Arrow Badges, either in upper right position or in center left (same positions as Hismile badges) |
| Technology badges | "COLOUR CORRECTION TECHNOLOGY" printed near top of packaging | "Hydroxyapatite" / "nHAP-Pro" or "ADVANCED COLOUR CORRECTION TECHNOLOGY RESEARCH" printed near top of packaging |
| Product Image | Image of purple-colored whitening strip slightly lifting from its backing card, with a white glow in the lifted edge | Identical image of purple-colored whitening strip slightly lifting from its backing card, with a white glow in the lifted edge, or image of purple-colored whitening strip appearing to lift from box with a white glow in the lifted edge |
| Brand Name Depiction | "hismile" - large white text running along full face of box | "CEEL!KE" - large white text running along full face of box |
| Left Side of Box | The words "PEEL" / "APPLY" and "BRUSH + REVEAL", each accompanied by an image | Uses identical language and cropped copies of the identical images |
| Right Side of Box | Intersecting white and purple circles with technology badges near bottom edge | Intersecting white and purple circles with technology badges near bottom edge |

59.     Moreover, as shown in the screen captures below, the Medcodes Defendants' advertisements use near exact duplicates of Hismile's below-described Purple Box Trade Dress packaging, and describe those products as "V34 Teeth Whitening Strips" or "V34 Purple Teeth Whitening Strips":[1]



60.     Defendants' conduct has caused actual confusion in the U.S. marketplace, including as shown in product reviews on Defendants' own TikTok shop who reported receiving Hismile's product despite being "verified purchase[rs]":



**Defendants' Willful Infringement and Copying of Hismile's iD Mouthwash Trade Dress**

61.     As shown in the following examples, Defendants also directly copied Hismile's distinctive iD Mouthwash Trade Dress to launch, market, and sell their Infringing mouthwash Products:

---

[1] V34® is a registered trademark registered in the U.S. and owned by Hismile, whose Purple Box Trade Dress teeth whitening strip products are sold under the name "v34 Whitening Strips."

| iD Mouthwash Trade Dress | Sample Infringing Products |
| --- | --- |
|  | |

| Side-by-Side Photographs of<br>Hismile iD Mouthwash Trade Dress and Sample Infringing Product |
| --- |
|  |

62.    Defendants' infringing "ANTI STAIN" mouthwash packaging replicates nearly all aspects of the packaging of Hismile's iD Mouthwash Trade Dress packaging, including at least the following elements:

| Element | Hismile | CEELIKE |
| --- | --- | --- |
| Bottle shape/silhouette | Tall, narrow, aerosol-style cylinder | Tall, narrow, aerosol-style cylinder |
| Bottle Color | Brushed metallic silver | Brushed metallic silver |

| Element | Hismile | CEELIKE |
|---|---|---|
| Bottle Cap Color | Solid red contrasting cap | Solid red contrasting cap |
| Typography | "STAIN MOUTHWASH" | "ANTI STAIN MOUTHWASH" |
| Product claims on bottle face | "Targets Gunk & Build-Up \| Fresh Breath \| Alcohol Free" | "Targets Plaque & Build-Up \| Freshens Breath \| Alcohol Free" |
| Bottle size | Same bottle size | Same bottle size |
| Bottle fill volume | 237 mL / 8 fl. Oz | Same bottle fill volume |

63.    Defendants did not only duplicate the iD Mouthwash Trade Dress; as shown in the above and below images, they also exactly duplicated or used mirror images of the "gunk bubble," created originally in-house by Hismile, that appears in Hismile's advertising copy, together with fonts, colors, language, and other imagery that all mimics or exactly duplicates Hismile's marketing material. Indeed, Defendants even copied Hismile's prices and promotions, as shown in the below examples:

| Hismile TikTok Shop | CEELIKE Global TikTok Shop |
|---|---|
| | |

| Hismile TikTok Shop | CEELIKE Global TikTok Shop |
|---|---|
|  | |

| Hismile TikTok Shop | CEELIKE & MSDRwikey Oral Care TikTok Shop |
|---|---|



27

| Hismile Website | CEELIKE Website |
|---|---|
|  | |

**The Defendants' Deceptive Marketing Tactics**

64.    Beyond copying Hismile's distinctive packaging and marketing Trade Dress designs to trade on the Hismile's hard-earned goodwill in its Purple Box Trade Dress and iD Mouthwash Trade Dress, Defendants have employed many additional deceptive marketing tactics to increase their profits while sowing consumer confusion about the source of their Infringing Products and the (non-)affiliation, sponsorship, or approval of those products by Hismile.

28

65.     One way Defendants do this is by operating a structured TikTok affiliate marketing program through which they direct affiliate marketers—intentionally targeting many of Hismile's own influencer marketing affiliates—to deceptively trade on Hismile's brand and deceive and confuse consumers by using Hismile's *own* products for product reviews in marketing copy, while pretending they are Defendants' products, while directing consumers to e-commerce pages where they purchase Defendants' products. The confusion is only amplified by the fact that CEELIKE has used influencer marketing affiliates who formerly marketed Hismile products.

66.     As but one of many egregious examples of Defendants' bad faith and willful misconduct, on April 6, 2026, one of Defendants' representatives in China purporting to act for CEELIKE contacted a Hismile affiliate influencer from a verified CEELIKE account to introduce (in translation, emphasis added) "… our new product: teeth whitening patches … **we've already sold tens of thousands of units in the US** and UK. Would you like to collaborate with us to promote them?" Once the influencer agreed to promote CEELIKE's mouthwash product and asked Defendants' representative to send some for the influencer to use for marketing videos, saying "I still don't have your product here," CEELIKE's representative responded: "**use the Hismile product to film the videos, and put the link to our product.** 😊" (in translation, emphasis added).

67.     Defendants' representative repeatedly confirmed that this tactic was designed to allow Defendants to "open" a new market for their knock-off products, and that they had commonly used this tactic before, including for their knock-off versions of Hismile's V34®

Whitening Strips, stating (in translation, emphasis added): "I'm telling you **this is very common**. **The same thing happened with our purple whitening strips** ... 😊".

68.     Indeed, this is not an isolated event. Defendants appear to have in fact paid and convinced other influencers to use Hismile's products to shoot marketing videos *for Defendants*, pretending Hismile's products *were Defendants'*. Two of many such examples are depicted immediately below, in which a CEELIKE Defendant-paid influencer used Hismile's mouthwash product as if it were Defendants', unsuccessfully attempting to hide Hismile's product name, bottle cap, and "iD" badge while it advertised Defendants' products and TikTok shops:



| Hismile's Bottle (Reference) |
|---|
|  |

69.      In still other examples, Defendants have caused their marketing affiliates to visibly depict results achieved from using Hismile's products to advertise and sell Defendants' Infringing Products from Defendants' TikTok storefronts, as in the following example, where the first two slides depict *Hismile's own employee* who has used Hismile's product:



70.　　In another example depicted in the below screen capture, a CEELIKE Defendant-paid influencer purports to compare Hismile's iD Anti-Stain Mouthwash with the CEELIKE Anti-Stain Mouthwash, but makes multiple false and misleading claims about the products and their comparative efficacy. For example, the CEELIKE Defendant-paid influencer falsely says and depicts the CEELIKE Anti-Stain Mouthwash to be a "clear" formula, which he contrasts with Hismile's brown formula. In fact, however, the CEELIKE formula is brown.

71.　　The same CEELIKE Defendant-paid influencer also falsely claims that the CEELIKE product contains nano-hydroxyapatite, pointing to the "nHAP-PRO" symbol displayed on the CEELIKE label. The influencer then purports to demonstrate use of the CEELIKE Anti-Stain Mouthwash, spitting the mouthwash out and revealing a brown liquid, thereby misleading consumers into believing that the formula that began as a clear liquid turned brown because it removed stains, debris, or impurities during use. The influencer reinforces this deceptive representation by stating: "it's not even the liquid because I showed you guys the liquid was clear which is why I like the CEELIKE brand better [than Hismile]." Acknowledging and reinforcing the substantial similarities between the products' bottle designs and the resulting

32

likelihood of consumer confusion, the CEEELIKE Defendants' own paid influencer admits:

"these bottles look so similar which is why I understand if you're getting confused":

 

72.    In yet other examples, Defendants' own marketing materials have used audio

content that they stole from Hismile marketing, including, e.g., the voiceover in the following

video, which was created in-house by Hismile featuring a Hismile employee's voice, further

confusing consumers about the source of Defendants' goods:



73.    As noted above, Defendants and their paid influencers further represent that the

Infringing Products contain "nano-hydroxyapatite" or "nHAP," a scientific and technical

shorthand used to refer to nano-hydroxyapatite. Defendants make these representations on the CEELIKE Anti-Stain Mouthwash and CEELIKE Purple Whitening Strips product packaging, product pages across their website and Amazon, TikTok Shop, and other storefronts, and in associated marketing materials. But on information and belief, these representations are false, and the Infringing Products instead contain only "Hydroxyapatite," a materially different substance, or otherwise do not contain nano-hydroxyapartite in the nanoscale form, particle size, or composition commonly understood and recognized within the scientific and global commercial marketplace.

74. Defendants there misrepresent the nature, quality, and composition of the key active ingredients contained in the Infringing Products.

75. In short, Defendants have preyed on Hismile's global network of affiliate marketers and social media influencers—including those in the U.S.—to market Defendants' knock-off goods in and to the U.S. (and elsewhere), including based on fake reviews that actually depict Hismile's products and not their own.

76. These false product "reviews" or demonstrations are deceptive, misleading, and falsely pass off Hismile's products as Defendants' or vice versa.

77. Further, Defendants have infringed Hismile's copyrights by using Hismile created voiceovers and created identical marketing to further confuse consumers. This intentional deception is enabled in significant part by Defendants' blatant copying of Hismile's distinctive Purple Box Trade Dress and iD Mouthwash Trade Dress.

78. Defendants' actions have been designed to cause, and have caused, actual confusion.

## COUNT I
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A)(1)(A))

79.    Hismile realleges the preceding allegations and incorporates them by reference herein.

80.    Defendants' advertisements, promotions, offers to sell, sales, importation, and/or distribution of the Infringing Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress.

81.    Defendant's use of Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress and marketing materials, and/or colorable imitations thereof, is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Hismile and as to the origin, sponsorship, and/or approval of the Infringing Products, at least by creating the false and misleading impression that Defendants or the Infringing Products are manufactured by, authorized by, or otherwise associated with Hismile.

82.    Hismile's Purple Box Trade Dress is entitled to protection under the Lanham Act. Hismile's Purple Box Trade Dress includes unique, distinctive, and non-functional designs which Hismile has extensively and continuously promoted and used in the U.S. as a source indicator of its products.

83.    As a direct result of Defendants' infringements, Hismile has lost sales estimated at up to thousands of dollars for each day of the infringements.

84.    Defendants' use of Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress and/or colorable imitations thereof in connection with their low-quality knock-offs that either do not function or function poorly, and have received substantial negative consumer feedback—including negative reviews posted on e-commerce portals and discussion boards, also has caused and, unless enjoined, will continue to cause substantial and irreparable injury to

35

Hismile for which there is no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress, Hismile's products, and Hismile.

85.    Indeed, while Hismile already has attempted to engage in corrective marketing, for example by posting videos to its social media profiles showing consumers how to distinguish between Hismile's legitimate products and Defendants' Infringing Products, that campaign cannot undo the harm that has been done or prevent all of the future harm that Defendants will continue to cause unless enjoined.

86.    Defendants' use of Hismile's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the trade dress and directly copied imagery and text in marketing materials, paid-for deceptive marketing of Defendants' products featuring Hismile's own products, and continued disregard for Hismile's rights after Hismile asked CEELIKE Defendants multiple times to cease and desist from this activity.

87.    Hismile is entitled to injunctive relief, to recover at least Defendants' entire profits, Hismile's actual damages (including but not limited to lost profits and corrective advertising expenses), enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT II
### DILUTION (N.Y. GEN. BUS. LAW § 360-L)

88.    Hismile realleges the preceding allegations and incorporates them by reference herein.

89.    Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress possess distinctive quality and have acquired secondary meaning such that the trade dress has become

36

associated in the public's mind with Hismile as identifying Hismile's goods as distinguished from goods sold by others.

90.     In bad faith, Defendants have used for their Infringing Products trade dress that is the same or substantially similar to Hismile's, including for the products' packaging and marketing. The Infringing Products are the same types of goods but of an inferior quality that Defendants predatorily direct to the same consumers as Hismile's, who are not professional or sophisticated, and who buy such products for general home use.

91.     Defendants' acts are likely to dilute the distinctiveness of Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress, to tarnish Hismile's reputation and the reputation of its products, and, in fact, has led to others infringing Hismile's protected trade dress and trademarks.

92.     Defendants' acts are causing irreparable injury to Hismile and to its goodwill and reputation, for which Hismile has no adequate remedy at law, and will continue to both damage Hismile and deceive the public unless enjoined by this Court.

**COUNT III**
**UNLAWFUL DECEPTIVE ACTS AND PRACTICES AND**
**FALSE ADVERTISING UNDER NEW YORK GEN. BUS. LAW §§ 349 & 350**

93.     Hismile realleges the preceding allegations and incorporates them by reference herein.

94.     Defendants' conduct alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of N.Y. GBL § 349.

95.     Defendants' conduct alleged herein also constitutes recurring, "false advertising, including labeling, of a commodity" in violation of N.Y. GBL §§ 350 and 350(a)(1).

37

96.     Through their actions, Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

97.     Defendants' deceptive acts or practices, as described herein, are materially misleading. Such acts or practices have deceived or have a tendency to deceive a material segment of the public to whom the Defendants have directed their marketing activities, and Hismile has been injured thereby.

98.     Defendants misleadingly and deceptively misrepresent and cause their affiliate marketers to misleadingly and deceptively misrepresent the Infringing Product to consumers, including without limitation by misrepresenting those products' active ingredients, including false or misleading claims about the products on the packaging and in marketing materials, and falsely representing Hismile's products to be Defendants' Infringing Products.

99.     By the acts described above, the Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Section 349 of the New York General Business Law.

100.    Defendants' labeling and marketing contain deceptive and materially misleading statements concerning the Infringing Products' active ingredients, as described herein.

101.    Defendants engaged in the foregoing unlawful conduct willfully, wantonly, and with reckless disregard for the truth.

102.    Defendants have caused and unless enjoined by this Court will continue to cause Hismile to sustain irreparable damage, loss, and injury, for which Hismile has no adequate remedy at law.

103. As a result of Defendants' recurring deceptive acts and practices, Hismile is entitled to monetary and compensatory damages, including lost profits, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, and attorneys' fees and costs, or, if greater, statutory damages for each wrongful act under N.Y. GBL §§ 349 and 350.

**COUNT IV**
**UNFAIR COMPETITION UNDER COMMON LAW**

104. Hismile realleges the preceding allegations and incorporates them by reference herein.

105. Defendants' unauthorized use of Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress and marketing materials, and/or colorable imitations thereof, constitutes a false designation of origin, passing off, trade dress infringement, and a false description or representation that the Infringing Products are authorized by Hismile, and is thereby likely to confuse consumers.

106. Defendants purposefully created the Infringing Products to emulate Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress and/or confusingly similar variants thereof. Defendant misappropriated the labors and expenditures of Hismile in bad faith with full knowledge that Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress is associated exclusively with Hismile and exclusively designate Hismile's products.

107. Defendants' acts of unfair competition were and are wanton, willful, and deliberate and are intended to reap the benefit of the goodwill and reputation associated with Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress.

108.    As a result of Defendants' unfair competition, Hismile has lost profits, suffered price erosion (because Defendants also have sold their knockoff Infringing Products at lower prices), incurred corrective advertising expenses, and has otherwise been damaged.

109.    The aforesaid conduct of Defendants is causing irreparable injury to Hismile and to its respective goodwill and reputation, for which Hismile has no adequate remedy at law, and will continue to both damage Hismile and deceive the public unless enjoined by this Court.

<u>**COUNT V**</u>
<u>**COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**</u>

110.    Hismile realleges the preceding allegations and incorporates them by reference herein.

111.    Hismile IP Pty. Ltd. and Hismile Pty. Ltd. are the original authors and owners of all copyrights in and to the literary works, audiovisual works, sound recordings, and pictorial works that comprise the packaging designs for Hismile's Whitening Strips (Purple Box Trade Dress) and iD Stain Mouthwash (iD Trade Dress), and that comprise Hismile's advertising and marketing materials for such products, including those works depicted or described above (the "the Copyright Works").

112.    The Copyright Works are copyright-protected works pursuant to 17 U.S.C. § 102, as to which Hismile IP Pty. Ltd. and Hismile Pty. Ltd. have certain exclusive rights under the Copyright Act, including but not limited to those rights under 17 U.S.C. §§ 106 and 113(a).

113.    The Copyright Works were authored and first fixed in tangible media in Australia, and thus are not U.S. works and are exempt from the registration requirements of 17 U.S.C. § 411.

114.    In violation of Hismile's rights under 17 U.S.C. §§ 106 and 113(a), Defendants have reproduced, prepared derivatives of, distributed copies of, publicly performed, displayed,

40

and digitally transmitted the Infringing Products or the marketing materials for such products, including but not limited to on Amazon, their TikTok shops, their websites, and other storefronts and marketing sites. Defendants have also sold and imported the Infringing Products in and into the U.S. in violation of 17 U.S.C. § 501(a).

115.    In connection with their marketing of Defendants' Infringing Products, CEELIKE Defendants also caused, encouraged, and paid their influencer affiliates on TikTok and other platforms to reproduce, prepare derivatives of, distribute copies of, publicly perform, display, and digitally transmit marketing materials for the Infringing Products in violation of Hismile's rights under 17 U.S.C. § 106.

116.    Each time a consumer sees Defendants' paid influencers' infringements, clicks on a sponsored link, and completes a purchase, Defendants profit from the direct infringements of their paid influencers.

117.    Defendants have the authority and practical ability to control their paid influencers' infringements, and despite being asked by Plaintiff to cease and desist from this activity, have refused to cease such infringements. To the contrary, Defendants have continued to actively encourage and cause such infringement.

118.    Defendants are directly, vicariously, or contributorily liable for each of foregoing described acts of copyright infringement.

119.    Defendants' infringements of Hismile's copyrights has been intentional, willful, and malicious.

120.    Under at least 17 U.S.C. § 503, Hismile is entitled to an order of the Court for the temporary and permanent impounding of all Infringing Product packaging and infringing marketing materials, all social media accounts and websites containing infringing marketing

41

materials, all computers, CAD files, machines, plates, and digital files or other articles by which the Infringing Product packaging and marketing materials are or may be reproduced, and an order for the permanent and final destruction of all such infringing copies and materials and equipment that were used in the making of such infringing copies.

121.    Hismile is entitled to injunctive relief, to recover at least Defendants entire profits and Hismile's actual damages (including but not limited to lost profits) under at least 17 U.S.C. §§ 502 and 504(a).

### JURY TRIAL DEMAND

Hismile requests a trial by jury as to all issues so triable.

### PRAYER FOR RELIEF

Hismile requests that this Court find in its favor and against Defendants, and that this Court grant Hismile the following relief:

1.    A judgment that Hismile's Purple Box Trade Dress and iD Mouthwash Trade Dress are valid and protectible, and that Defendants have infringed the foregoing in violation of § 1125(a) of Title 15 of the United States Code and common law, and diluted the foregoing in violation of New York law;

2.    A judgment that Defendants have engaged in unfair competition under New York common law;

3.    A judgment that Defendants have infringed Hismile's copyrights;

4.    A judgment that Defendants have engaged in deceptive acts and practices and false advertising in violation of N.Y. Gen. Bus. Law §§ 349 and 350;

5.    A preliminary and permanent injunction enjoining Defendants and their officers, agents, servants, employees, users, attorneys, and all those persons in active

42

concert or participation with any of them now or in the future from the acts described in this Complaint, including, without limitation, enjoining them from making, offering to sell, selling, marketing, advertising, importing into the U.S., or transporting in or through the U.S., or otherwise distributing any (1) oral mouthwash products in a tall, narrow aerosol-style cylindrical bottle silhouette, with a brushed metallic silver body and a solid red contrasting cap that appear the same or substantially similar to Hismile's; or (2) teeth whitening strip products in boxes having a dominant purple color with primarily white typography that appear the same or substantially similar to Hismile's.

6.   An Order that any owner, operator, or facilitator of any retail, wholesale, marketplace, exchange, advertising platform, or other physical, virtual, or digital establishment or platform who receives actual notice of the Order be directed to destroy all Infringing Products in their inventory, possession, custody, or control, and related advertising, product listings, or the like for the Infringing Products.

7.   An Order directing Defendants to recall all Infringing Products sold and/or distributed and to provide a full refund for all recalled Infringing Products;

8.   An Order directing the destruction of: (i) all Infringing Products, including all recalled products, (ii) any other products that use a copy, reproduction, or colorable imitation of Hismile's trade dress in Defendants' possession or control, (iii) all molds, tooling, plates, CAD files, machines, plates, and digital files or other articles and any other means of making the Infringing Products or marketing material therefore in Defendants' possession, custody, or control, (iv) all computers, electronic devices, social media accounts, and websites Defendants

43

have used to promote the Infringing Products; and (v) all advertising materials related to the Infringing Products in Defendants' possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118 and 15 U.S.C. § 503;

9. To the extent compatible with the scope of the Order in the preceding paragraph, an Order directing Defendants to publish a public notice on all e-commerce, social media, and other marketing channels they have used that provides a proper attribution of Hismile's trade dress to Hismile, and to provide a copy of this notice to all customers, distributors, marketing affiliates, influences, and/or others whom Defendants employed, paid, solicited, or otherwise used to market or sell the Infringing Products, or that they sold or recalled Infringing Products to or from;

10. An Order requiring Defendants to account for and pay over to Hismile the profits realized by Defendants (and treble those profits), pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117(a) and (b), and NY GBL §§ 349 and 350, arising out of Defendants' acts of willful copyright and trade dress infringement, and deceptive practices and false advertising;

11. An Order requiring Defendants to pay Hismile its actual damages arising out of Defendants' acts of common law unfair competition, deceptive practices, false advertising, and copyright and trade dress infringement, including without limitation all lost profits, price erosion, and corrective marketing expenses;

44

12.    An Order pursuant to NY GBL § 349(h), requiring Defendants to pay Hismile statutory damages or treble damages of up to $1,000 per item sold or sale lost, for Defendants' acts of deceptive practices and false advertising;

13.    An Order requiring Defendants to provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from the manufacture, import, export, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing Products;

14.    An Order awarding exemplary or punitive damages against Defendants and in favor of Hismile;

15.    An Order requiring Defendants to pay Hismile its reasonable attorneys' fees and costs;

16.    An Order requiring Defendants to pay Hismile pre-judgment and post-judgment interest to the full extent allowed under the law; and

17.    An award to Hismile of such further relief at law or in equity as the Court deems just and proper.

Dated:  New York, New York          Ballard Spahr LLP
        May 29, 2026


                                    By:  /s/Wendy R. Stein
                                         Wendy R. Stein

                                    Wendy R. Stein (NYS Bar No. 4153086)
                                    steinw@ballardspahr.com
                                    Susan A. Smith (*pro hac vice* forthcoming)
                                    smiths@ballardspahr.com
                                    Benjamin N. Simler (*pro hac vice* forthcoming)
                                    simlerb@ballardspahr.com
                                    BALLARD SPAHR LLP
                                    1675 Broadway
                                    19th Floor
                                    New York, NY 10019-5820
                                    Telephone: 212.223.0200
                                    Facsimile: 212.223.1942
                                    *Attorneys for Plaintiff*

46